**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

ANA MARIA DIAZ MARTINEZ,
Petitioner,
v.
FERETI SEMAIA, WARDEN OF ADELANTO ICE PROCESSING CENTER, ET AL.,
Respondents.

Case No. 5:26-cv-06478-AJR

**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE**

## I.
## INTRODUCTION

On November 1, 2026, Petitioner Ana Maria Diaz Martinez (A# 246-199-382) ("Petitioner"), an immigration detainee represented by counsel, filed a Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging her detention in immigration custody. (Dkt. 1 at 2-3.) Pursuant to General Order 26-05, Respondents Fereti Semaia, Warden of Adelanto ICE Processing Center, Thomas Giles, Los Angeles Field Office Director for Immigratoin and Customs Enforcement ("ICE"), David Venturella, Acting Director

of ICE, Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"), and Todd Blanche, Attorney General of the United States (collectively, "Respondents") were required to show cause why the Petition should not be granted no later than November 9, 2026. (Dkt. 5.) Respondents did not do so and therefore have consented to the relief sought in the Petition.[1] See C.D. Cal. L.R. 7-12. The parties have consented to proceed before a U.S. Magistrate Judge for all purposes. (Dkts. 3, 6.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody on her prior conditions of release.**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition, which is verified by counsel. (Dkt. 1 at 19.) Respondents were required to show cause why the Petition should not be granted no later than November 9, 2026, but did not do so. (Dkt. 5.) Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner is a native and citizen of Nicaragua born in 1993. (Dkt. 1 at 3.) On November 16, 2022, Petitioner crossed near Eagle Pass, Texas, and surrendered to U.S. Border Patrol. (Id. at 4.) On November 17, 2022, DHS released Petitioner

---

[1] The judges of the Central District of California have been notified by leadership at the U.S. Attorney's Office that Respondents will not file a notice of non-opposition in all immigration habeas actions due to the overall volume of such cases and therefore in some cases, Respondents simply will not file a response where they do not have an opposition argument to advance. Therefore, the Court understands Respondents' failure to respond to the Petition in this case as a decision not to advance any opposition argument, as opposed to simply missing a deadline.

with a stamp stating parole under Section 212(d)(5) of the Immigration and Nationality Act ("INA") through January 17, 2023. (Id.) Also on November 17, 2022, DHS issued a Call-In Letter directing Petitioner to appear on December 23, 2022 at 300 North Los Angeles Street, Seventh Floor, Room 7621, Los Angeles, for enrollment in the Alternatives to Detention ("ATD") program. (Id.) Petitioner complied with that appointment and all later instructions. (Id.)

ICE provided a telephone used for photographic check-ins for approximately one month. (Id.) In early 2023, approximately February, Petitioner returned the device at an in-person appointment. (Id.) ICE set her next reporting appointment for 2026. (Id.) After Petitioner's parole expired on January 17, 2023, DHS continued managing her case through reporting requirements without re-detaining her until October of 2026. (Id. at 4-5.)

On September 15, 2026, Petitioner appeared at ICE as directed and was told to return on October 13, 2026. (Id. at 5.) Petitioner never missed an ICE appointment and received no allegation of a supervision violation. (Id.) Petitioner has resided with relatives at the same Los Angeles home since her release and plans to return there if released. (Id.) Petitioner retained a legal services provided in April 2023 to pursue affirmative asylum. (Id.) Petitioner filed an application for asylum and that application remains pending. (Id.) Petitioner has a Category C08 Employment Authorization Document that is valid through July 18, 2029. (Id.) Petitioner also has a Social Security card restricted to work with DHS authorization. (Id.) Petitioner has no prior arrest, criminal proceeding, or gang affiliation, and is unaware of any prior removal order. (Id.)

On October 13, 2026, Petitioner arrived voluntarily for her scheduled ICE check-in. (Id. at 6.) Petitioner was then told that she was under arrest. (Id.) Officers showed her no arrest warrant, served none, and cited none. (Id.) Petitioner did not receive a written custody determination or any advance opportunity to challenge detention. (Id.) Petitioner was subsequently transferred to the Adelanto

ICE Processing Center. (Id.) Since being re-detained, Petitioner has not received a bond hearing or individualized custody ruling by an immigration judge. (Id. at 7.)

## III.
## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief (Count I) is that her arrest without a warrant violated 8 U.S.C. § 1357(a)(2), 8 C.F.R. § 287.8(c)(2)(ii), and 28 U.S.C. § 2241(c)(3)). (Dkt. 1 at 11-12.) Petitioner's second claim for relief (Count II is that her re-detention by immigration authorities following DHS's affirmative release of Petitioner violated her procedural due process rights. (Id. at 12-14.) Petitioner's third claim for relief (Count III) is that her continued detention violates her substantive due process rights. (Id. at 14.) Petitioner's fourth claim for relief (Count IV) is that she is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and instead is subject to discretionary detention under 8 U.S.C. § 1226(a). (Id. at 14-15.) Petitioner's fifth claim for relief (Count V) is that Respondents have taken her documents and property in violation of the Fifth Amendment. (Id. at 15.) Petitioner seeks immediate release from custody on conditions no more restrictive than those in effect before October 13, 2026. (Id. at 16.) Petitioner further seeks an order enjoining her re-detention absent advance notice and a hearing before a neutral decisionmaker at which the Government shows materially changed circumstances. (Id.) Finally, Petitioner seeks an award of reasonable attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"). (Id. at 18.)

## IV.
## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that

these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions

which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.
## ANALYSIS

It is undisputed that Petitioner entered the United States on November 16, 2022 and then was taken into custody by U.S. Border Patrol. (Dkt. 1 at 4.) It is further undisputed that on November 17, 2022, Petitioner was released from custody, granted parole under Section 212(d)(5) of the INA, and directed to enroll in

the ATD program.[2] (Id.) Thus, the Court concludes that once Petitioner was released from custody on supervision, Petitioner acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

It is also undisputed that Petitioner was re-detained by immigration authorities on October 13, 2026, while attending a scheduled ICE check-in and was not provided prior notice or a pre-deprivation hearing. (Dkt. 1 at 6.) It is further undisputed that Petitioner never missed an ICE appointment and received no allegation of a supervision violation. (Id. at 5.) Thus, the Court concludes that Petitioner's re-detention by immigration authorities on October 13, 2026, without notice or a pre-deprivation hearing, violated Petitioner's procedural due process rights. See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788

---

[2] The fact that Petitioner was released from custody necessarily means that Petitioner demonstrated to the satisfaction of immigration officials that Petitioner's release would not pose a danger to property or persons and that Petitioner was likely to appear for any future proceeding. See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

(C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return h[er] to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody under her prior conditions of release. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.[3] See, e.g., Baltazar v.

---

[3] As set forth above, Petitioner has a substantial liberty interest in remaining free from detention which must be considered under the first Matthews factor. Under the second Matthews factor, the risk of erroneous deprivation is very high because it is undisputed that Petitioner has no prior arrest, criminal proceeding, or gang (cont'd . . .)

Noem, 2026 WL 413527, at *5 (C.D. Cal. Jan. 30, 2026) ("Where courts have found the procedural due process violation examined here, they routinely order release and enjoin Respondents from re-detaining petitioners without providing a pre-detention hearing before a neutral arbiter."); Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Baltazar, 2026 WL 413527; see also Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo, 2025 WL 2381464, at *8 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community."). Thus, the Court concludes that the Petition must be granted with the foregoing prospective injunctive relief.

---

affiliation, and is unaware of any prior removal order. (Dkt. 1 at 5.) Finally, under the third Matthews factor, the Government's interest in detaining Petitioner without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided. See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing here. Petitioner has suffered an irreparable injury by being re-detained in violation of her due process rights, and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and file a habeas petition to secure her release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing.[4]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).

---

[4] Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

Finally, the Court notes that Petitioner also requested an award of reasonable attorneys' fees and costs. (Dkt. 1 at 18.) The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action."). In sum, the Court GRANTS the relief clearly sought in the Petition. (Dkt. 1 at 16-18.) Respondents were required to show cause why the Petition should not be granted no later than November 9, 2026, but did not do so. (Dkt. 5.) Thus, the Court concludes that Respondents have consented to the Court granting the relief requested in the Petition. See C.D. Cal. L.R. 7-12. The Court also concludes that Petitioner has established a *prima facie* case entitling her to the relief requested and Respondents declined to present any fact or argument to oppose the requested relief. Thus, the Court concludes that Petitioner is entitled to the relief requested in the Petition based on the Court's consideration of the merits of Petitioner's claims, separate and apart from the fact that Respondents have consented to such relief being granted.

## VI.
## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner Ana Maria Diaz Martinez (A# 246-199-382) ("Petitioner") from custody on her prior conditions of release (only those conditions in place prior to Petitioner's October 13, 2026 re-detention, if any). Respondents shall also immediately return any confiscated property and documents to Petitioner upon release. Respondents shall not re-detain Petitioner pursuant to 8 U.S.C. § 1226 without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by

clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. Respondents shall file a notice of compliance no later than **three days from entry of Judgment**.

IT IS SO ORDERED.

DATED: November 10, 2026

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE